IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Juana Moore,<br><br>      Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>      Defendant. | No. CV-22-00550-TUC-RM (JR)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Juana Moore ("Moore") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner"). (Doc. 1.) This matter, on referral to the undersigned United States Magistrate Judge for Report and Recommendation, is ripe for decision.[1] (Doc. 15, 24, 26.) As more fully set forth below, the Magistrate Judge recommends that the district court reverse the Administrative Law Judge's ("ALJ") decision and remand the matter to the agency for further proceedings.

**BACKGROUND**

**Procedural History**

On March 16, 2020, Moore protectively filed a Title II application for disability and

---

[1] Moore did not file a reply brief and the time for filing a reply brief has elapsed.

disability insurance benefits alleging a disability onset date of March 4, 2017. (Administrative Record "AR" 24.) More's claim was denied initially on May 18, 2020, and denied on reconsideration on August 17, 2020. (AR 102-114 (initial denial); AR 116-128 (reconsideration denial).) A hearing was held before an ALJ on May 6, 2021. (AR 43-67.) In a decision dated November 8, 2021, the ALJ determined Moore was not disabled. (AR 24-36.) On November 8, 2022, the Appeals Council denied review thus making the ALJ's decision final for judicial review. (AR 1-6.) *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

**Brief Relevant Factual Background**

Moore was born in 1967 and holds a GED. (AR 268, 67-68.) She stopped working in January 2015. (AR 67-68.) She has past work as an assembler, custodian and office worker. (AR 268.)

Moore was referred by her primary care provider to Amany Hararah, Psy. D., for evaluation and treatment. (AR 625.) On June 7, 2017, Dr. Hararah recorded Moore as stating, "I need to get myself into some counseling. I need [to] start dealing with my pas[t]. It has gotten to the point, where it's getting to be to[o] much for me to handle . . .[.]" *Id.* (emphasis omitted.) Dr. Hararah recorded Moore's complaints as depression including depressed mood, crying spells, insomnia, irritability, decreased concentration[,] trauma including recurrent memories/thoughts, distressing dreams, flashbacks, hyperviligence, avoidance and exaggerated startle response. (AR 625-626.)

On June 21, 2017, Moore is recorded by Dr. Hararah as "seeking services to address depression." (AR 668-669.) Dr. Hararah recorded Moore's symptoms as "anxiety including excessive worry, restlessness, muscle tension, hypervigilance [and] depression

- 2 -

including depressed mood, anhedonia, crying spells, insomnia, decreased energy, guilt, decreased concentration." (AR 669.) Dr. Hararah noted "sleep issues[,] including difficulty falling asleep, difficulty staying asleep and non-restorative sleep." *Id*. Dr. Hararah recorded that Moore has a history of outpatient individual therapy. *Id*. On mental status exam, Moore is recorded as alert, well groomed, tearful, pleasant and cooperative and guarded, with depressed mood and fair insight. (AR 671.) Dr. Hararah diagnosed Moore with post-traumatic stress disorder ("PTSD") and referred her to "the acute PTSD group." (AR 671-672.)

On August 2, 2017, Dr. Hararah saw Moore for a psychiatric follow-up visit. (AR 643-647.) Dr. Hararah recorded that "pt reported that her symptoms have slightly improved." (AR 643.) Dr. Harrah recorded that Moore continues to experience anxiety and flashbacks and that she also has dreams of getting into a car accident with her daughter and ex-husband chasing them. *Id*. Dr. Hararah referred Moore to "the anxiety group as a start" with an intent to transition her to the trauma group and eventually to the PTSD group. *Id*.

On August 9, 2017, Dr. Hararah saw Moore via telehealth. (AR 1306-1310.) Dr. Hararah recorded that Moore reported "taking Effexor 75 mg since Monday and has not noticed a positive difference." (AR 1306.) Moore is recorded as having more difficulties with sleep and middle of the night awakenings due to nightmares surrounding a history of trauma. *Id*. Dr. Hararah assessed Moore as, *inter alia*, scoring 51-60 on the DSM Axis V.[2]

---

[2] Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. A score of 51-60 indicates "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *See* https://www.edwardpierce.net/super/Axis5.htm (last visited Nov. 14, 2023).

(AR 1307.)

On October 6, 2017, Nathan Edmundson, Psy. D., conducted a consultative examination. (AR 1284-1289.) Moore's chief complaint is recorded as, "PTSD, fear of being alone . . . Claimant reported symptoms of frequent sadness, nightmares, and increased anxiety associated with past traumas." (AR 1284.) Dr. Edmundson recorded that Moore reported "having to deal with 'so many things all my life, since a child.'" *Id*. Dr. Edmundson recorded that Moore reported crying frequently and "seeing a doctor at Kaiser for her mood." *Id*. Dr. Edmunson recorded that Moore reported being abandoned by her mother and sent to live with her grandparents as a child, after her half-brother died, due to the emotional impact that her half-brother's death had on her mother. (AR 1284-1285.) She also reported suffering physical abuse by her previous husband. (AR 1284.) Her mood is recorded by Dr. Edmundson as being "up and down" and the record reflects that Moore suffered suicidal ideation in the past. (AR 1285.)

Dr. Edmunson recorded Moore's diagnoses as PTSD and major depressive disorder, moderate. (AR 1287.) He also opined, *inter alia*, that Moore is moderately limited in her ability to complete a normal workday or workweek without interruptions resulting from her psychiatric conditions "as [her] depression occurs regularly." (AR 1288.) Dr. Edmunson opined that Moore is mildly to moderately limited in her ability to interact with coworkers and with the public due to her "PTSD, anxiety, and depressive symptoms." *Id*. Dr. Edmunson opined that Moore is moderately limited in her ability to "deal with the usual stresses encountered in [a] competitive work environment" due to her "PTSD, anxiety, and depression." *Id*. Dr. Edmunson also opined that Moore is mildly limited in her

- 4 -

ability to perform work activities on a consistent basis reasoning that "depression contributes to some distractibility evident by [Moore's] difficulty with attention and concentration tasks." (AR 1288.) Dr. Edmunson opined that Moore's "memory difficulties may require a supervisor to repeat instructions or provide prompts periodically throughout the day." *Id*. Dr. Edmunson provided a narrative opinion as follows:

> Given the claimant's psychiatric and treatment history and results of this evaluation, it appears that the mental health symptoms may be chronic in nature. Given the current diagnosis, it appears that the claimant's current mental health condition may not abate on its own within a one-year period. The claimant presented as polite and cooperative, but moderately depressed and anxious. She has long standing depressive symptoms along with anxiety and nightmares related to her PTSD symptoms. She is likely to have difficulty tolerating stressful work environments due to her mental health symptoms, have difficulty making regular and consistent work attendance due to depression, and she is lily (*sic*) to have some difficulty interacting with [the] general public due to anxiety, social avoidance, and her PTSD symptoms. It appears claimant functions best in having distractions to occupy her mind. Because of this, it is likely a manageable workload could be helpful for her psychologically as long as it does not add significant stress. With medication and continued comprehensive health care, claimant is likely to show improvement and her prognosis is **fair**.

(AR 1288-1289.) (emphasis in original).

**The ALJ's Decision**

At step one, the ALJ determined that Moore had not engaged in substantial gainful activity since March 4, 2017, the alleged onset date, through June 30, 2019, her date last insured. (AR 26.) At step two, the ALJ determined that Moore suffered from the severe impairments of degenerative disc disease, rotator cuff tendinosis without tear, epicondylitis of the left elbow, status post left elbow extensor carpi radialis brevis debridement with tendon repair, and status post left radial tunnel release. *Id*. At step three, the ALJ

determined Moore did not suffer from an impairment or combination of impairments that met or equaled a listed impairment. (AR 27-28.) After step three but before step four, the ALJ determined Moore's residual functional capacity ("RFC") as follows:

> [T]he claimant ha[s] the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally push and pull with the left upper extremity, occasionally reach overhead with the left upper extremity, frequently claim ramps and stairs, never climb ladders, ropes, and scaffolds, and occasionally crawl.

(AR 29.) At step four, the ALJ determined that Moore is capable of performing her past relevant work as a bag loader and janitor. (AR 35.) Consequently, the ALJ found that Moore was not under a disability at any time from March 4, 2017, her alleged onset date, through June 30, 2019, her date last insured. (AR 36.)

## STANDARDS OF REVIEW

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not

substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## ISSUES ON REVIEW

Moore raises three issues for review. (Doc. 24 at 3.) First, she urges that the ALJ erred in evaluating her treating physicians' opinions thereby resulting in an improper RFC. *Id*. at 4-10. Second, she urges that the ALJ erred in failing to assign limitations due to her knee pain. *Id*. at 10-15. Third, she urges that the ALJ improperly assessed her mental limitations. *Id*. at 15-18. The Commissioner defends the ALJ's decision. (Doc. 26.) As more fully explained below, the Court agrees with Moore on her third issue. Remand for further administrative proceedings is recommended.

## ANALYSIS

Moore makes two arguments in support of her claim that the ALJ improperly assessed her mental impairments. First, she urges that the ALJ erred in finding at step two that her mental impairments are non-severe.(Doc. 24 at 15.) Second, she urges that the ALJ failed to consider her mild impairment in concentrating, persisting or maintaining pace in formulating her RFC. *Id*. at 17.

…

**Mental Limitations Finding**

"An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). "If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." *Webb*, 433 F.3d at 687 (quoting S.S.R. No. 85–28 (1985)). "Step two, then, is a 'de minimus screening device [used] to dispose of groundless claims,' *Smolen*, 80 F.3d at 1290, and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb,* 433 F.3d at 687 (quoting S.S.R. 85-28).

At step two, the ALJ found that Moore's mental limitations are not severe. (AR 28.) The ALJ assessed Moore's mental limitations as required by 20 C.F.R. pts. 404.1520a, 416.920a. (AR 27-28.) In doing so, the ALJ determined that Moore has: (1) no limitation in understanding, remembering, or applying information; (2) no limitation in interacting with others; (3) mild limitation in concentrating, persisting, or maintaining pace; and (4) no limitation in adapting or managing herself. *Id.*

As explained below, this Court finds that the ALJ failed to support with substantial evidence her determination that Moore has no limitation in her ability to understand, remember, or apply information and that she also has no limitation in her ability to interact with others, and that she is mildly limited in her ability to concentrate, persist or maintain

pace. This Court finds no error with respect to the ALJ's finding that Moore has no limitation in her ability to adapt and manage herself.

<u>Understanding, Remembering and Applying Information</u>

As mentioned, the ALJ determined that Moore has no limitation in her ability to understand, remember and apply information. (AR 27.) In reaching this determination the ALJ relied on a portion of Dr. Edmunson's evaluation wherein Dr. Edmunson found that Moore "exhibited adequate fund of knowledge, fair memory, intact linear[] and logical thought processes, and unremarkable thought content." *Id*. citing AR 1287. The ALJ also purportedly cited to three records that she determined evidence "mental status examinations [that] show that the claimant had intact recent memory." *Id*. citing AR 634, 671, 1547. This Court examines the evidence relied upon by the ALJ in reverse.

A review of AR 634, 671 and 1547 reveal that they are all the same record of Moore's June 21, 2017 visit with Dr. Hararah. The ALJ's citation gives the appearance that three distinct medical records support her finding that mental status examinations (plural) show that Moore had recent intact memory when that is not the case. Significantly, and not mentioned by the Commissioner, less than two months later, on August 9, 2017, Moore is recorded by Dr. Hararah as scoring 51-60 on the Global Assessment of Functioning scale. This scoring demonstrates that Dr. Hararah determined that Moore has moderate difficulty in social, occupational or school functioning. (AR 1307.)

As mentioned above, the ALJ also relied upon a portion of Dr. Edmundson's report. In doing so, the ALJ also appears to have failed to consider Dr. Edmunson's report as whole. It is true that Dr. Edmunson recorded that Moore exhibited adequate fund of

knowledge, fair memory, intact linear and logical thought processes, and unremarkable thought content. However, Dr. Edmunson also opined that Moore is mildly limited in her "ability to perform work activities on a consistent basis . . . as depression contributes to some distractibility evident by her difficulty with attention and concentration tasks." Dr. Edmunson further explained that Moore's "memory difficulties may require a supervisor to repeat instructions or provide prompts periodically throughout the day." (AR 1288.) The ALJ's decision does not reflect that she considered these opinions by Dr. Edmunson in reaching her determination that Moore has no limitation in her ability to understand, remember and apply information.

In light of the foregoing, this Court finds that the ALJ's determination that Moore has no limitation in her ability to understand, remember and apply information is not supported by substantial evidence.

Social Interaction

The ALJ determined that Moore has no limitation in her ability to interact socially with others. (AR 27.) The ALJ supports her determination with Moore's adult function report and a record from a November 28, 2016 hospital visit. *Id*. citing 295-296 (function report), 725 (November 28, 2016 record of hospital visit).

The ALJ accurately records Moore's self-report in her adult function report that she has no difficulty getting along with family, friends or others. The ALJ also accurately notes that Moore also indicated that she goes out alone, shops in stores, and is active in her church.

However, this Court finds the ALJ's erroneously relied on the record of Moore's

hospital visit. As mentioned above, Moore's alleged disability onset date is March 4, 2017. The November 28, 2016 hospital visit record relied upon by the ALJ predates March 4, 2017. This Court finds that the ALJ's reliance on a medical record generated before the relevant time period is insufficient to support a finding that Moore has no limitation in her ability to interact with others.

This Court also finds that Moore's adult function report, now standing alone, is not substantial evidence to support her determination that Moore has no limitation in her ability to interact with others. Significantly, the ALJ appears to have failed to consider Dr. Edmunson's opinion regarding Moore's capacity for social interaction. (AR 1285-1289.) Dr. Edmunson opined that "[w]ith ability to interact with coworkers and with the public, [Moore] is mildly to moderately limited due to her PTSD, anxiety, and depressive symptoms." (AR 1288.) Dr. Edmunson also opined that Moore's "ability to accept instruction from supervisors . . . is mildly limited in that her depression, PTSD, and associated anxiety could cause instructions to be interpreted as [a] negative reflection on her ability and ultimately lead to crying spells." *Id.*

On balance, this Court determines that the ALJ's reliance solely on Moore's adult function report while ignoring Dr. Edmunson's opinion formed after his consultation examination, is insufficient to support a finding at step two that Moore has no limitation in her ability to interact with others.

Concentration, Persistence and Pace

The ALJ found that Moore is mildly limited in her ability to concentrate, persist or maintain pace. (AR 28.) The ALJ supported her finding by noting that Dr. Edmunson

- 11 -

recorded that Moore was able to recite four digits forward and two in reverse, that she was able to spell "world," and that although she had difficulty subtracting by threes, it was likely because of Moore's difficulties with the English language. (AR 28.) The ALJ also relied upon her finding that "[e]lsewhere in the record . . . [Moore] had good impulse control, logical thought processes, and normal thought content." *Id.* citing AR 634 (Dr. Hararah's June 21, 2017 record), 671 (Dr. Hararah's June 21, 2017 record), 1547 (Dr. Hararah's June 21, 2017).

Taking the ALJ's cited evidence in reverse, the ALJ cited the same June 21, 2017 record of Moore's visit with Dr. Hararah three times thus making it appear that her finding is supported by multiple separate medical records rather than one single medical record that is contained in the AR multiple times.[3] Additionally, while highlighting Dr. Edmunson's finding that Moore was able to recite four digits forward and two in reverse, that she was able to spell "world," the ALJ appears to have neglected to consider Dr. Edmunson's other specific opinions. For instance, Dr. Edmunson also opined that Moore is mildly limited in her ability to perform work activities on a consistent basis <u>and</u> that she is moderately limited in her ability to complete a normal workday or workweek without interruptions as a result of her psychiatric condition namely, depression. (AR 1288.)

The ALJ also failed to mention and grapple with Dr. Hararah's August 9, 2017 scoring of Moore at 51-60 on the Global Assessment of Functioning scale. Dr. Hararah's scoring indicates that she opined that Moore has moderate difficulty in social, occupational

---

[3] (As noted above, the ALJ also cited Dr. Hararah's June 21, 2017 medical record three times in support of her finding that Moore has no limitation in her ability to understand, remember and apply information.)

or school functioning. (AR 1307.)

In light of the foregoing, this Court finds that the ALJ's determination that Moore is mildly limited in her ability to concentrate, persist or maintain pace is not supported by substantial evidence.

Ability to Adapt and Manage Oneself

The ALJ determined that Moore has no limitation in her ability to adapt and manage herself. (AR 28.)  In reaching this determination, the ALJ relied upon Moore's adult self-function report. *Id*. citing AR 295-294. In her adult self-function report, Moore reported that she is able to bathe and dress herself, prepare simple meals, do household chores, drive and go out alone, and manage her personal finances. (AR 295-294.) Neither Dr. Edmunson's report, nor medical records from Dr. Hararah, provide any evidence to the contrary. Moore has not pointed to any evidence to the contrary. This Court determines that the ALJ's finding that Moore has no limitation in her ability to adapt and manage herself is supported by substantial evidence.

The Commissioner argues that the ALJ was correct in her step two finding by urging that the ALJ correctly noted that Dr. Edmunson observed Moore had no diminution of daily functioning due to her mental health impairments. (Doc. 26 at 13.) The Commissioner points out that Dr. Edmunson recorded that Moore "denied having limitations with daily living resulting from psychiatric, emotional, and/or cognitive issues." *Id*. citing AR 1286. The Commissioner also points out that Dr. Edmunson recorded that Moore does not need help with preparing meals, that she is able to make change at the store and that she spends her day reading, doing light gardening and housework, and watching television. *Id*. While

an accurate representation of a portion of Dr. Edmunson's report, the Commission ignores Dr. Edmunson's more specific, details opinions on Moore's ability to function <u>in the workplace</u> from a psychological standpoint. *See* AR 1287-1288.

The Commissioner also cites to a November 27, 2016 record from Jerry Chung Lee, M.D., that notes that Moore screened negative for depression. (Doc. 26 at 14, citing AR 709.) This medical record from Dr. Lee is from Moore's visit to the hospital for abdominal pain, nausea, vomiting and flu like symptoms. (AR 708.) There is no indication that Dr. Lee performed any diagnostic screening for depression at this hospital visit. *Id*. This record was also generated prior to Moore's alleged onset date of March 4, 2017 and is thus of limited, if any, probative value.

The Commissioner also cites Dr. Hararah's August 2, 2017 record representing that Moore's symptoms "had improved." (Doc. 26 at 14.) However, this August 2, 2017 medical record states, "[s]ince last visit, pt reported that her symptoms have <u>slightly</u> improved." (AR 643.) (emphasis added.) This medical record further records that Moore "[c]ontinues to experience anxiety and flash backs[,]" and that she suffers "nightmares that are very distressing." *Id*. The Commissioner also points to a reference in this medical record that notes, "since the last visit these symptoms have been stable." (AR 658.) However, just prior to this "symptoms have been stable" language, Dr. Hararah's August 2, 2017 medical record notes that Moore's chief complaint is addressing her symptoms involving anxiety. *Id*. The term "stable" indicates that something is not likely to change or

come to an end suddenly.[4] Accordingly, examining the August 2, 2017 medical record as a whole, Dr. Hararah's use of the word "stable" indicates Dr. Hararah's opinion is that Moore's anxiety is unlikely to change suddenly.

In sum, this Court finds that the ALJ's determinations at step two that Moore has no limitation in her ability to understand, remember or apply information and that she has no limitation in her ability interact with others, and that she is mildly limited her in ability to concentrate, persist or maintain pace are not supported by substantial evidence.

Harmful Error

Having found error, the curt must determine whether the error is harmful. Harmless error has been described as whether "the ALJ's error did not materially impact [her] decision." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054–55 (9th Cir. 2006). *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006) (holding that an error is harmless if it was "inconsequential to the ultimate non[-]disability determination[.]" (internal quotation marks omitted)).

This Court determines that the ALJ's error is not harmless. As mentioned above, "[s]tep two . . . is a de minimus screening device [used] to dispose of groundless claims[.]" *Smolen*, 80 F.3d at 1290. (internal quotations omitted.) An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence." *Webb,* 433 F.3d at 687 (quoting S.S.R. 85-28) (internal quotations omitted.) As explained above, this Court finds that the

---

[4] *See, e.g.*, https://www.collinsdictionary.com/us/dictionary/english/stable-condition (last visited Nov. 15, 2023).

ALJ's conclusions that Moore has no limitation in her ability to understand, remember or apply information and that she has no limitation in her ability interact with others, and that she is mildly limited her in ability to concentrate, persist or maintain pace are not clearly established by the medical evidence.

If the ALJ had rendered a finding that Moore is limited to any degree in her ability to understand, remember or apply information or that she is limited to any degree in her ability to interact with others the ALJ would have would have been required to consider these limitations in formulating Moore's RFC. This is because in formulating an RFC, an ALJ is required to consider all of a claimant's medically determinable impairments, even those that are not severe. *See* 20 C.F.R. 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").[5]

In light of the foregoing, this Court determines that the ALJ's error in assessing Moore's mental limitations at step two as explained above is not harmless.

**Consideration of Moore's Mild Limitation in Formulating the RFC**

Assuming, *arguendo*, that the ALJ's error at step two in assessing Moore's mental limitations[6] is not harmless (and as explained above this Court finds otherwise), this Court also finds that the ALJ erred in failing to consider Moore's mild limitation in her ability to

---

[5] Under 20 C.F.R. pt. 404.1545(a)(2) the ALJ is required to consider her finding that Moore is mildly limited her in ability to concentrate, persist or maintain pace in determining Moore's RFC. As discussed *infra*, this Court finds that the ALJ failed to do so.

[6] (except the ALJ's determination regarding Moore's ability to adapt and manage herself)

concentrate, persist or maintain pace in formulating the RFC. Moore argues that she is, by the RFC formulation, "not even limited to simple, unskilled tasks, [and i]s assigned no mental health limitations whatsoever." (Doc. 24 at 17.) This Court construes Moore's argument as being that the ALJ erroneously failed to consider her mild limitation in her ability to concentrate, persist or maintain pace in formulating her RFC. The Commissioner does not squarely address Moore's assertion. (Doc. 26 at 12-15.) For the reasons set forth below, the Court agrees with Moore.

As mentioned above, an ALJ is required to consider all of a claimant's medically determinable impairments, even those that are not severe, in formulating a claimant's RFC. *See* 20 C.F.R. 404.1545(a)(2). As also mentioned above, the ALJ determined that Moore is mildly limited in her ability to concentrate, persist or maintain pace. (AR 28.) However, the ALJ's decision provides no indication that she considered Moore's mild limitation in her ability to concentrate, persist or maintain pace in determining Moore's RFC. (AR 29-35.)[7] The entirety of the ALJ's RFC formulation discussion is devoted to Moore's physical impairments. *Id*.

Because there is no indication from the ALJ's decision that she considered Moore's mild limitation in her ability to concentrate, persist and maintain pace in formulating the RFC, this Court finds that the RFC is not supported by substantial evidence. S*ee Solomon v. Comm'r of Soc. Sec. Admin*., 376 F. Supp. 3d 1012, 1021 (D. Ariz. 2019) (finding error

---

[7] The ALJ included a limitation to "simple, routine work" in a hypothetical posed to the VE. *See* AR 60. However, without any explanation, the ALJ failed to include this "simple, routine work" limitation in the RFC formulation. (AR 29.)

- 17 -

where the ALJ's order provides no indication that the ALJ considered the claimant's mild limitation in social functioning and concentration, persistence and pace when evaluating the claimant's RFC) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014) (holding that "[i]n determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe."); *De La Cruz v. Colvin*, 2014 WL 2865076, *2-3 (C.D. Cal. 2014) (remanding because ALJ failed to assess all of the claimant's medically determinable impairments in the RFC analysis); *Winter-Duncan v. Astrue*, 2012 WL 1641891, *4 (W.D. Wash. 2012) (same)). *See also Hutton v. Astrue*, 491 Fed. Appx. 850, 850 (9th Cir. 2012) (holding the ALJ erred "in failing to include Hutton's post-traumatic stress disorder . . . in his hypotheticals to the vocational expert at Step Five," after finding it caused the claimant "'mild' limitations in the areas of concentration, persistence, or pace"); *Silvester H. v. Kijakazi*, Case No. 5:20-cv-02503-SP, 2022 WL 4466717, at *7-8 (C.D. Cal. Sept. 26, 2022) (collecting cases and finding that "[d]espite the ALJ's assurances, the opinion does not include any discussion or analysis of how plaintiff's non[-]severe mental impairments were factored into the RFC determination, and the RFC itself does not contain any non[-]exertional limitations . . . For this reason, it is not clear to the court that in determining plaintiff's RFC the ALJ actually considered the mild limitations across the functional areas found at step two.").

Harmful Error

Having found error, this Court must determine whether the error is harmful. An error is harmless if it was "inconsequential to the ultimate non[-]disability

determination[.]"*Robbins*, 466 F.3d at 885 (holding that an" (internal quotation marks omitted)). This Court cannot determine whether the outcome at step four (or five, which was not reached in this case) would be the same had the ALJ not erred. *See generally, Aida I. v. Saul*, Case No. 3:19-cv-00476-AJB-RNB, 2020 WL 434319, at *4-5 (S.D. Cal. Jan. 28, 2020) (holding that "the [c]ourt cannot determine how the VE would have testified had the specific mild functional limitations to which Dr. Nicholson had opined been included in the hypotheticals posed."). This Court determines that the ALJ's failure to consider Moore's mild limitation in her ability to concentrate, persist or maintain pace in her RFC formulation is not harmless.

<u>Remand is Recommended</u>

Upon finding the ALJ committed reversible error, the district court has the discretion to remand or reverse and award benefits. *Mack v. Saul*, No. 1:18-cv-01287-DAD-BAM, 2020 WL 2731032, at *3 (E.D. Cal. May 25, 2020) (citing *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989)). The Ninth Circuit Court of Appeals has held that, "[g]enerally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed." *Mack*, 2020 WL 2731032, at *3 (quoting *Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994)). "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

This Court determined that remand to the Commissioner is required so that the ALJ may first consider whether Moore is limited in her in her ability to understand, remember or apply information and whether she is limited in her ability to interact with others in light of the evidence contained in the AR as discussed above. Remand is also required so that the ALJ may consider in her RFC formulation, in the first instance, Moore's mild limitation in her ability to concentrate, persist or maintain pace.

Moore's Remaining Issues

As explained above, this Court finds that remand to the Commissioner is appropriate. On remand, Moore's other claims brought for review should also be considered. *See Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) (determining that "th[e] [c]ourt need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Slover v. Kijakazi*, Case No. 1:21-cv-01089-ADA-BAM, 2023 WL 5488416, at *5 (E.D. Cal. Aug. 23, 2023) (declining to address claimant's remaining arguments upon finding error requiring remand); *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (holding that "because we remand the case to the ALJ for the reasons stated, we decline to reach [the claimant's] alternative ground for remand").

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that the district court **REVERSE** the decision of the Administrative Law Judge and remand the matter to the Commissioner for further administrative proceedings. Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days

of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **4:22-cv-550-RM**.

Dated this 16th day of November, 2023.

_Jacqueline M. Rateau_
Honorable Jacqueline M. Rateau
United States Magistrate Judge